IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Cleo Clemens, Administrator for the
Estate of Sheila Bowers, deceased, *et al.*,

    Plaintiffs,

vs.                                              Case No. 14-4020-JTM

Wells Fargo Bank, N.A., *et al.*,

    Defendants.

MEMORANDUM AND ORDER

In 2009, Roy and Sheila Bowers agreed to refinance their home mortgage with Wells Fargo. The closing agent mistakenly notified Wells Fargo that the refinancing closing had occurred, and Wells Fargo released its prior lien. When Wells Fargo discovered the truth, it moved to add a caveat to the Bowers's title to reflect the original debt. The Bowers, who in the interim had been making the scheduled payments under the refinanced mortgage, stopped payments and instituted an action in Shawnee County District Court against Mortgage Electronic Registration Systems (MERS), a servicing entity for the closing agent, seeking millions of dollars in damages. MERS removed the action to this court, Wells Fargo intervened in the action, and on October 4, 2012, the court granted defendants summary judgment on all claims advanced by the Bowers. *See Bowers v. MERS*, 2012 WL 4747162 (D.

Kan. 2012) (*Bowers I*) (Dkt. 301). The court later granted summary judgment to Wells Fargo on its counterclaim, under which it sought an equitable reinstatement of the mortgage. (*Id.* Dkt. 352)

The plaintiffs[1] promptly appealed the action (*Bowers I*, Dkt. 311). While that appeal was pending, they also filed another action against Wells Fargo in Shawnee County District Court. This action, filed on October 12, 2013, is virtually a carbon copy of their original action. The only major difference is that plaintiffs' counsel added as a defendant Shapiro & Mock, LLC. the law firm which represented Wells Fargo in *Bowers I*. Wells Fargo removed the action to this court, and both defendants have moved to dismiss the action under principles of res judicata, collateral estoppel, and the statute of limitations. For the reasons provided herein, the court grants the defendants' motions.[2]

*Bowers I* was litigated fully. The plaintiffs claims included fraud, slander of title, conversion of "chain of title," breach of contract, anticipatory repudiation, negligence, detrimental reliance, unjust enrichment, violation of the Real Estate Settlement Procedures

---

[1] Roy Bowers died on September 6, 2012. (*Bowers I*, Dkt. 306). After Sheila Bowers died on April 28, 2014 (*Bowers II*, Dkt. 27), the court granted plaintiff's motions to substitute Administrators for the estates of the couple. (Dkt. 52, 64). The defendant Shapiro & Mock has subsequently become the law firm Shapiro & Kreisman, LLC.

[2] Shortly after Wells Fargo's initial motion to dismiss (Dkt. 15), plaintiffs' counsel filed an Amended Complaint (Dkt. 30) which adds a few minor factual allegations to the original 37-page, eleven count state court Petition. Plaintiffs' counsel only sought leave for this amendment two days later (Dkt. 31), and Wells Fargo opposes the leave to amend. (Dkt. 37). The court denies the motion for leave to amend as moot, determining that all of the plaintiffs assertions, whether in the original Petition or the Amended Complaint are properly dismissed.

Act (RESPA) and of the Kansas Consumer Protection Act (KCPA). The docket in that action comprises 393 separate pleadings and other events. In its summary judgment Order, the court explicitly recognized the discovery in that action was "extensive" and the briefing "exhaustive." 2012 WL 4747162, at *18. This is understatement. Wells Fargo grounded its summary judgment motion on 159 paragraphs of factual contentions. The plaintiffs controverted many of these facts, and asserted a further 102 paragraphs. (Bowers I, Dkt. 255). The court resolved all factual and legal issues in the case in a lengthy opinion. The court granted summary judgment on Wells Fargo's counterclaim afer receiving additional factual allegations and legal argument

*Bowers II* repeats the allegations advanced in *Bowers I*, again focusing on the inadvertent release of lien and Wells Fargo's attempt to correct the error. (Dkt. 30, Amended Complaint, ¶¶ 11-37, 51, 100-101, 184-188). Accordingly, the court finds that plaintiffs' claims are subject to dismissal under the doctrine of res judicata, which precludes the relitigation of issues which were previously litigated.

In determining whether the doctrine applies in a diversity action, this court looks to Kansas law relating to res judicata. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001). *See Tri-State Truck Ins. v. First Nat'l Bank of Wamego*, 931 F.Supp.2d 1120, 1133 (D. Kan. 3013). "As a practical matter, Kansas law regarding claim preclusion does not appear to differ significantly from federal law." *Tri-State*, 931 F.Supp.2d at 1133 (citing *Rhoten v. Dickson*, 290 Kan. 92, 106, 223 P.3d 786, 797 (2010); *Stanfield v. Osborne Indus.*, 263 Kan. 388, 396, 949 P.2d 602, 608 (1997). *See*

3

RESTATEMENT (SECOND) OF JUDGMENTS § 87, Comment a, p. 315 (noting "little difference in the doctrine of res judicata as expounded in state and federal courts").

The doctrine applies "when four conditions concur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and [4] identity in the quality of persons for or against whom claim is made." *Regency Park v. City of Topeka*, 267 Kan. 465, 478, 981 P.2d 256 (1990). *See also Stanfield v. Osborne Industries*, 263 Kan. 388, 397, 949 P.2d 602 (1997). The doctrine is not limited to claims actually advanced in prior litigation, but to "any matter that *might have been* asserted in the first lawsuit." *Stanfield*, 263 Kan. at 397 (citing *Prospero Assoc. v. Burroughs Corp.*, 714 F.2d 1022, 1025 (10th Cir. 1983) (emphasis added).

All of the elements of res judicata are present here. *Bowers I* presented a huge list of claims, all centering on the attempted 2009 refinancing. *Bowers II* is the same. Allowing for the substitution of the Estates for Roy and Sheila Bowers, the parties are the same. Although *Bowers I* is currently on appeal, this court's summary judgment rulings are final judgments for purposes of *res judicata*. *See Bui v. IBP, Inc.*, 205 F.Supp.2d 1181, 1189 (D. Kan. 2002) ("[t]he pendency of the appeal does not alter the finality of the case for purposes of res judicata or collateral estoppel").

And all of the plaintiffs' claims arise from the same cause of action. For purposes of res judicata, "the Court views the evidence pragmatically, considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit." *Jackson v. Yellow Tech. Services*, 988 F.Supp. 1399, 1402 (D. Kan. 1997). *See also Hatch*

4

*v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir.1999). All of the plaintiffs' claims are premised on the events surrounding the 2009 refinancing, the inadvertent release of lien, and the filing of the caveat.

In responding to the defendants' motions, the plaintiffs suggest that *Bowers I* was somehow narrow in scope, and that the earlier case simply could not include the claims now presented. A review of the extensive record, and multitude of claims, advanced in *Bowers I* disproves any such suggestion. As defendants note, in separate letters to the Tenth Circuit panel hearing the *Bowers I* appeal, the plaintiffs have explicitly acknowledged the vast scope of that case. It may be that for tactical reasons, relating to avoiding Wells Fargo's intervention in *Bowers I*, plaintiffs avoided advancing certain claims in that action. But, as noted above, res judicata applies not simply to claims which were actually advanced, but to claims which might have been.

The plaintiffs also argue that the cases are different because the "[m]otivation to protect an interest or create a cloud by the Caveat is distinctly different from collecting and enforcing" the underlying debt. (Dkt. 56, at 10). This purported distinction is wholly without merit. As the court recognized in *Bowers I*, the entire point of the Caveat was to preserve the lender's rights, including the right to ultimately collect on the debt. Nothing prevented the plaintiffs from presenting their current claims in *Bowers I*.[3]

---

[3] Given these findings, the court need not address the defendants' additional argument that the claims advanced herein are subject to claim preclusion.

Res judicata also protects the defendant law firm. The only additional allegation against the law firm is that Shapiro & Mock set a demand letter to the Bowers in October 14, 2010, based on their default on mortgage payments. The October 14 demand letter, and a second, followup letter, preceded the December, 2010 foreclosure action by Wells Fargo which, as noted elsewhere in this opinion, Wells Fargo voluntarily dismissed a few weeks after filing. The Amended Complaint references the foreclosure complaint and other correspondence from Shapiro & Mock, but all of these acts took place in the context of the firm's representation of Wells Fargo, and all took place as a part of that lender's attempt to protect its mortgage interest in the underlying property. Further, for purposes of the "same party" element of res judicata, attorneys subjected to suit for their actions in previous litigation are deemed in privity with their clients. *See Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) ("[t]he law firm defendants appear by virtue of their activities as representatives of [their clients] creating privity") (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n. 6 (7th Cir.1986)).

*Plotner* arose in the context of a federal bankruptcy claim, but the court finds no reason to believe that Kansas law would generate any different result. While Kansas has not explicitly deemed lawyers to be in privity with the clients for res judicata purposes, it has recognized that the privity element may be satisfied by "'*substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same*.'" *Van Deelen v. City of Kansas City*, No. 101,226, 2009 WL 3738833, *4 (Kan.App. Nov 6. 2009) (quoting and adding emphasis to *Lowell Staats Min. Co. v.*

*Philadelphia Elec.*, 878 F.2d 1271, 1279 (10th Cir. 1989)). As further observed in *Lowell*, consistent with *Plotner*, "[p]rivity has been held to exist in the following relationships: concurrent relationship to the same property right (i.e. trustee and beneficiary); successive relationship to the same property or right (i.e. seller and buyer); *or representation of the interests of the same person.*" 878 F.2d at 1279. *Van Deelen*, emphasizing this same passage from *Lowell*, held that city employees employed to conduct surveillance of the plaintiff were in privity with the city for res judicata purposes.

Other states explicitly hold that the attorney-client relationship establishes privity. *See Taylor v. Riley*, ___ P.3d ___, 2014 WL 4401418 (Idaho Aug. 27, 2014); *Kinsky v. 154 Land Co.*, 371 S.W.3d 108, 113 (Mo.Ct.App. 2012); *Jayel Corp. v. Cochran*, 366 Ark. 175, 234 S.W.3d 278 (2006) (attorney-client relationship was sufficient to satisfy the privity requirement); *Smith v. Jenkins*, 562 A.2d 610, 615-16 (D.C.App.1989). *See also* RESTATEMENT (SECOND) OF JUDGMENTS § 39 (1982) ("A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party").

Second, the court finds that even if res judicata did not apply, the plaintiffs' claims would be time-barred. Wells Fargo argues that plaintiffs' federal statutory claims under RESPA and Truth in Lending Act (TILA) claims are time-barred because they were not brought within one year from the closing date of the loan. 15 U.S.C. § 1640(e), 12 U.S.C. § 2614. They argue that plaintiffs had until October 2009 to attempt to bring a RESPA or TILA claim regarding the original 2008 mortgage, until mid-2010 to attempt to bring a

RESPA or TILA claim (assuming that the refinancing had taken place, which, of course, never occurred), or until mid-2011 to bring such a claim about supposedly erroneous escrow reconciliation. Finally, Wells Fargo contends that the plaintiff's state law claims are also subject to various respective statute of limitations.(Dkt. 56, at 15-19).

The court agrees, and finds that the defendant law firm is entitled to the same protection. The "Fair Debt" demand letter which underlies the plaintiffs' claim against the firm was sent on October 14, 2010. The present action was not filed until December 12, 2013, over three years later. Accordingly, the plaintiffs claims against the law firm are precluded by the three-year statue of limitations contained in the KCPA. Even in the absence of the time bar, this court, in its prior Orders in *Bowers I*, determined that Wells Fargo had a valid and enforceable lien interest, and Shapiro & Mock's actions in seeking to enforce that interest are not actionable, since they worked no injury to the plaintiffs.

The plaintiffs in their response to the motions to dismiss do not dispute Wells Fargo's calculations as to the time periods applicable to specific state claims. Rather, they argue that the state claims are preserved under the Kansas savings statute, in light of their filings in a Kansas state court case. Second, they argue that the court should apply the doctrine of equitable tolling. Third, they argue that events occurred within the limitations periods for the present 2013 action.

Contrary to plaintiffs' argument asserting the court should equitably toll the statute of limitations, the limitation in RESPA is constructed as a statute of repose, and is not subject to equitable tolling. *See Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1040 (D.C.

Cir. 1986). Even if such tolling were permitted, equitable tolling is an exceptional remedy, and is only available where a plaintiff acts with diligence, but is unable to timely file a claim due to "extraordinary circumstances beyond his control." *Garcia v. Shanks*, 351 F.3d 468, 473, n. 2 (10th Cir. 2003). The plaintiffs fall well short of this burden, having failed to make any showing that they could not have timely filed their claims earlier.

The Kansas savings statute, K.S.A. 60-518, only applies when an earlier action was "commenced within due time" but then dismissed without prejudice. The statute is inapplicable here, because plaintiffs never "commenced" any state court case. Rather, Wells Fargo initiated a state foreclosure action, which it dismissed after intervening in *Bowers I*. The plaintiffs filed an answer and various counterclaims in that state action *after the case was dismissed.* The Kansas Court of Appeals held that the plaintiffs' pleadings were not properly filed after the action had been properly dismissed. *Wells Fargo Bank, N.A. v. Bowers*, 303 P.3d 727, 2013 WL 3792885, at *6 (Kan. App. July 19, 2013). The Kansas Supreme Court rejected the Bowers' Petition for Review. The plaintiffs' claims in the state action were not "commenced within due time" because they were never really "commenced" at all. *See Moore v. Luther*, 291 F.Supp.2d 1194, 1203 (D. Kan. 2003) (citing *Dunn v. City of Emporia*, 643 P.2d 1137 (Kan. App. 1982)).

Finally, the plaintiffs' attempts to identify more recent injuries — such as the foreclosure sale of the property, supposed discovery abuse, and the infliction of emotional distress on Sheila Bowers in 2012 — are without merit. The foreclosure sale occurred as a direct consequence of the events recognized, and the rulings issued, in *Bowers I*.  There is

9

no showing, and, given the court's rulings, could be none, that the sheriff's sale was wrongful or illegal. As the court noted earlier, discovery in *Bowers I* was "extensive," and plaintiffs did in fact receive the discovery in the action which is the source of their current claims. They received it and relied upon it in their extensive briefing on summary judgment. The claim of discovery abuse is merely a repackaging of the plaintiffs' discovery arguments from *Bowers I.*

The claim that Sheila Bowers was subjected to the tort of outrage apparently is premised on her attendance at the deposition of one of defendant Wells Fargo's expert witnesses. Plaintiffs claim that Ms. Bowers suffered extreme emotional distress when the expert testified at one point relating to his sources. According to the Amended Complaint:

> Further for Sheila's upset relating to the on the record misrepresentations by the expert witness hired by Wells to help them take the property when she was present and heard him state he did not use Google but in fact the mathematical probability of the matching sources in order and by exact cite and page was inconceivable. To be subject to such deceit and efforts to take her home without regard to the truth was intolerable and caused her to direct the continuation of the action even in what were ultimately her last days which were spent in a trailer court in Topeka rather than their home.

(Dkt. 30, ¶ 168).

Plaintiffs supply no authority for the proposition that a client's attendance at a deposition, and disagreement with the testimony heard there, could ever rise to the level of extreme infliction of emotional distress required for the tort of outrage. *See Miller v. Sloan, Listrom, Eisenbarth, Sloan and Glassman*, 267 Kan. 245, 978 P.2d 922, 930 (1999)

(conduct "must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society").

More fundamentally, the allegation is emblematic of the entire case, first presented in *Bowers I* and now here. The passing of Sheila Bowers is unfortunate, as is the passing of her husband before her. It is doubly unfortunate that the Bowers' last years were marked by the meritless litigation urged on by their counsel. The present litigation, *Bowers II*, is both unfortunate and unnecessary.

IT IS ACCORDINGLY ORDERED this 29th day of December, 2014, that the defendants' Motions to Dismiss (Dkt. 15, 24, 37, 42) are hereby granted; plaintiffs' Motion to Amend Complaint (Dkt. 31) is denied as moot, the court finding the complaint is subject to dismissal with or without the proposed amendment.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE
